# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JERRY BOWENS,

                                    Plaintiff,

     v.

                                                 9:11-CV-784

JOSEPH T. SMITH,                                 (GLS/ATB)

BRIAN FISCHER, et al.,

                                    Defendants.

JERRY BOWENS, Plaintiff, *pro se*
RICHARD LOMBARDO, AAG, for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, Chief United States District Judge.

In this amended civil rights complaint, plaintiff alleges that defendants improperly retained plaintiff in administrative segregation at Shawangunk Correctional Facility without due process[1] for "over" five hundred and seventy five days. (Amended Complaint ("AC") ¶ 9).  Plaintiff claims that this lengthy stay in administrative segregation ("Ad Seg") violated his First, Fourth, and Eighth Amendment rights, and he also claims that he has been denied Equal Protection. (AC at pp.24-27).[2]  Plaintiff seeks injunctive and substantial monetary relief.

---

[1] Plaintiff asserts procedural and substantive due process violations.

[2] These pages refer to the pages assigned to Dkt. No. 8 by the court's electronic case management system ("CM/ECF").  There are two sets of numbers at the top of many of the pages of the amended complaint.  When plaintiff filed his amended complaint, he re-filed his original

Presently before the court is defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). (Dkt. No. 19). For the following reasons, this court will recommend granting the motion in part and denying it in part.

## DISCUSSION

### I.  Facts and Procedural History

#### A.  Facts

Plaintiff alleges that when he was incarcerated at Downstate Correctional Facility ("Downstate") in 2009,[3] he was allowed to be in General Population. (AC ¶ 1). Plaintiff states that he was in General Population at Downstate for approximately one and one half months before he was transferred to Shawangunk Correctional Facility ("Shawangunk"). Upon his transfer to Shawangunk, he was told that he would be placed in Ad Seg. Plaintiff claims that although he had a hearing prior to Ad Seg placement, he was not allowed to introduce any exhibits or letters of reference in an effort to prove that he should not be placed in restrictive confinement. (AC ¶¶ 6, 8).

Plaintiff states that he maintained "an outstanding disciplinary record," and he was given no reason for his continued confinement in Ad Seg. (AC ¶¶ 8-9). However, plaintiff also states that he was placed in Ad Seg "as a result of the people plaintiff knew or knows on the outside . . . ." (AC ¶ 10) (emphasis in original). Plaintiff also

complaint with additional pages. The original complaint still has the pages that were assigned by CM/ECF to Dkt. No. 1. Thus, I will refer to those pages that were assigned by CM/ECF when plaintiff filed his amended complaint (Dkt. No. 8).

[3] Plaintiff also alleges that he was sent to Downstate in 2011, and was placed in General Population even though he had been in Ad Seg at Shawangunk since his transfer there in 2010. (AC ¶ 2).

states that the defendants' belief that plaintiff is "a threat to its [sic] security or other inmates" is "insane" and "extreme." (*Id.*)

Plaintiff states that his conditions in Ad Seg have been unconstitutionally harsh. He was denied use of the telephone and denied access to his "spiritual leader" when plaintiff's father died. Plaintiff states that his right to visitation, association, and possession of personal property were limited, and his commissary and package privileges were limited. (AC ¶¶ 12-13). Plaintiff alleges that he had the same restrictions placed upon him as inmates who were in the Special Housing Unit ("SHU") for disciplinary violations. He was shackled when he was escorted to the showers, and had no contact with his "peers." (AC ¶ 14).

## B. Procedural History

Plaintiff filed this action on July 11, 2011, naming 19 defendants, including the State of New York and several John/Jane Does. (Dkt. No. 1). On October 12, 2011, Chief Judge Sharpe ordered plaintiff to file an amended complaint or risk dismissal of the action based on his failure to state a claim against any of the named defendants. (Dkt. No. 7). On November 9, 2011, plaintiff filed this amended complaint. (Dkt. No. 8). Chief Judge Sharpe reviewed the amended complaint, finding that the amended complaint "consists of a copy of the original complaint, to which Bowens appended 'an explanation as to why each defendant is being sued.'" (Dkt. No. 10 at 3) (citing AC at 44).

Although plaintiff included an "explanation" in his amended complaint, he still failed to state a claim with respect to several defendants, including the John/Jane Doe

defendants. (Dkt. No. 10 at 3-4). The court found that the plaintiff's "explanation" with respect to these individuals was "wholly conclusory" and did not suffice to suggest personal involvement. (Dkt. No. 10 at 4). The court dismissed defendants Beilein, Pingotti, Capone, Salo, Boll, and Annucci without prejudice. (*Id.*) Chief Judge Sharpe also dismissed claims against the Department of Corrections and Community Supervision ("DOCCS") and the State of New York with prejudice. (Dkt. No. 10 at 5). Chief Judge Sharpe dismissed any individual claims for damages against defendant Fischer, but allowed the case to proceed on the issue of prospective injunctive relief as against defendant Fischer in his official capacity. (*Id.*)

Finally, Chief Judge Sharpe allowed the plaintiff's damage action to proceed against defendants Joseph T. Smith, Albert Prack, and Lucien J. LeClaire, Jr. individually. (Dkt. No. 10 at 6-7). These remaining defendants have filed the motion to dismiss. (Dkt. No. 19).

## II. <u>Motion to Dismiss</u>

### A. **Legal Standards for Fed. R. Civ. P. 12(b)(6)**

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which

4

it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

### B.    Legal Standards for Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is addressed to the court's jurisdiction. The standard of review for a motion under Rule 12(b)(1) is "'substantively identical'" to the standard under Rule 12(b)(6). *Kaufman v. All Seasons Marine Works, Inc.*, No. 3:11-CV-1874, 2012 WL 4928862, at *2 (D. Conn. Oct. 16, 2012) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)). One difference in the two rules is that in a motion under Rule 12(b)(1), the party asserting the court's jurisdiction has the burden of proof to demonstrate that subject matter jurisdiction exists, while in a motion under Rule 12(b)(6), the movant bears the burden of proof. *Id.*

Another difference between the two rules is that while the court's review of a motion under Rule 12(b)(6) is generally limited to the four corners of the complaint with some exceptions, in a motion under Rule 12(b)(1), the court may resolve factual issues by reference to evidence outside the pleadings, including affidavits. *Id.* at *3

5

(quoting *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007)).

## III.  <u>Injunctive Relief</u>

In his amended complaint, plaintiff requested that defendants be ordered to release him from Ad Seg.  In the part of their motion to dismiss addressed to lack of subject matter jurisdiction, defendants state that plaintiff has now been released from Ad Seg, and has been transferred to the Assessment and Program Preparation Unit ("APPU") at Clinton Correctional Facility.  In support of this argument, defendants have submitted the declaration of James Facteau, Corrections Captain at Clinton Correctional Facility. (Dkt. No. 19-2; Facteau Decl. ¶ 3).  Captain Facteau states that on December 6, 2011, defendant Smith issued an order, releasing plaintiff from Ad Seg. (*Id.* & Ex. A).  On December 19, 2011, plaintiff was transferred to Clinton's APPU, where he has been incarcerated since that time. (*Id.* ¶¶ 4-5 & Ex. B).  The APPU is a housing unit at Clinton which is designed to house high profile, easily targeted, or victim-prone inmates. (*Id.* ¶ 6).  Captain Facteau states that APPU inmates have all the privileges accorded to inmates in general population, including all the privileges about which plaintiff is complaining in this amended complaint. (*Id.* ¶ 7).

Exhibit A to the Facteau Declaration is Superintendent Smith's order releasing plaintiff from Ad Seg, finding that his "status in Administrative Segregation is no longer warranted." (Facteau Decl. Ex. A).  The first part of the order indicates the reason that plaintiff was initially placed in Ad Seg, but then states that plaintiff's behavior was "problem free," and his "attitude towards staff continues to be positive."

6

(*Id.*)  Exhibit B shows that plaintiff was transferred to Clinton's APPU on December 19, 2011.  Thus, it is clear that plaintiff has not been housed in Ad Seg since December of 2011.

### A.   Mootness - Legal Standard

A case is moot, and the court has no jurisdiction when the "parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Federal courts are without power to decide questions that cannot affect the rights of the parties in the case before the court. *See Swaby v. Ashcroft*, 357 F.3d 156, 159-160 (2d Cir. 2004) (petitioner's injury must be traceable to respondent and likely to be redressed by a favorable judicial decision).  The plaintiff must have a "personal stake" in the litigation. *Fox v. Board of Trustees of the State University of New York*, 42 F.3d 135, 140 (2d Cir. 1994), *cert. denied*, 515 U.S. 1169 (1995).

### B.   Application

In this case, plaintiff was released from Ad Seg and has been housed in Clinton's APPU[4] since December of 2011.  Plaintiff has been afforded the injunctive relief that he sought in the amended complaint.  Plaintiff no longer has a "personal stake" in the injunctive relief he requested.  Therefore, any claims for injunctive relief against defendant Fischer[5] in his official capacity may be dismissed as moot. *See also*

---

[4] The court notes that plaintiff mentions APPU in his amended complaint and implies that it would be an acceptable alternative to Ad Seg. (AC at p.36).

[5] Chief Judge Sharpe kept Commissioner Fischer as a defendant in this action, in his official capacity only, for purposes of prospective injunctive relief.  Plaintiff's claim for injunctive relief is moot, thus, it is no longer necessary to have the Commissioner as a defendant in this action.

*Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (transfer from a prison facility

moots an action for injunctive relief against the transferring facility); *Mawhinney v.*

*Henderson*, 542 F.2d 1, 2 (2d Cir. 1976) (plaintiff's release from incarceration moots

claim for injunctive relief); *Schaurer v. Fogg*, 885 F. Supp. 28, 31 (N.D.N.Y. 1995).

Plaintiff's claims for monetary relief, however, survive his release from Ad Seg. *See*

*Prins*, 76 F.3d at 506; *Mawhinney*, 542 F.2d at 2.

## IV. **Personal Involvement**

### A. **Legal Standards**

Personal involvement is a prerequisite to the assessment of damages in a section

1983 case, and respondeat superior is an inappropriate theory of liability. *Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347

F.3d 431, 435 (2d Cir. 2003). A supervisory official is personally involved if that

official directly participated in the infraction. *Williams v. Smith*, 781 F.2d 319, 323–24

(2d Cir. 1986). The defendant may have been personally involved if he or she failed

to remedy the wrong after learning about it through a report or appeal; if the official

created a policy or custom under which unconstitutional practices occurred or allowed

such a policy or custom to continue, or if he or she were grossly negligent in

managing subordinates who caused the unlawful condition or event. *Id. See also*

*Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58

F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, 556 U.S. 662 (2009).

The failure of a supervisory official to investigate a letter of protest written by

an inmate is insufficient to establish personal involvement. *Smart v. Goord*, 441 F.

Supp. 2d 631, 642–643 (S.D.N.Y. 2006). Mere notice of alleged wrongdoing is insufficient to establish a supervisor's or administrator'[s] personal involvement. *Gibson v. Comm'r of Mental Health*, No. 04 Civ. 4350, 2008 WL 4276208, at *8, 2008 U.S. Dist. LEXIS 70080, at *27 (S.D.N.Y. Sept. 17, 2008). While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . '[p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.'" *Boddie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (quoting *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002).

## B. Application

Defendants Prack and LeClaire argue that plaintiff has failed to sufficiently allege that they were personally involved in the alleged constitutional violations. According to plaintiff, defendant Prack was the Acting Director of Special Housing, whose office is in Albany, New York. (Dkt. No. 8 at p.6). Defendant Lucien LeClaire, Jr. is the Deputy Commissioner of DOCCS, whose office is also in Albany. (*Id.*) These individuals are clearly supervisory officials.

### 1. Defendant LeClaire

In the amended portion of plaintiff's complaint, in a very short paragraph, he explains that he "sent several letters, complaints [and] grievances" to defendant LeClaire, and that his "deliberate indifference has led to cruel and unusual punishment," a violation of equal protection, and "the other causes of action." (AC at p.49). There is no other indication that defendant LeClaire was in any way involved

in the Ad Seg placement, its periodic review, or was responsible for any of the conditions in SHU.  As stated above, the letters alone do not establish personal involvement, and plaintiff's conclusory statement that defendant LeClaire's "deliberate indifference" led to "cruel and unusual punishment" or a denial of equal protection, without more, is insufficient to state a constitutional claim. *See also Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (conclusory allegations are insufficient to state a claim for relief under section 1983).

### 2.   Defendant Prack

The amended complaint contains the same type of conclusory allegations against defendant Prack.  Plaintiff states that defendant Prack is liable because he "has control over all SHU." (AC at p.49).  Plaintiff claims that he sent letters to defendant Prack, but that he "failed to intervene" to remedy "the violations."  Plaintiff states nothing more than a claim based upon respondeat superior, which as stated above, is insufficient to state a section 1983 claim.  Thus, the amended complaint may be dismissed in its entirety as against defendant Prack.

The court will turn to an analysis of plaintiff's claims against the remaining defendant, Joseph Smith, Superintendent of Shawangunk.

## V.   Superintendent Smith

### 1.   Procedural Due Process

#### A.   Legal Standards

In order to begin a due process analysis, the court determines whether plaintiff had a protected liberty interest in remaining free from the confinement that he

challenges and then determines whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). In *Sandin v. Conner*, the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in a segregated housing unit automatically gives rise to due process protection. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000). Instead, cases in this circuit have created guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. *Palmer v. Richards*, 364 F.3d 60, 64-66 (2d Cir. 2004). A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Colon v. Howard*, 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305-day confinement). Shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest.

"SHU confinements of fewer than 101 days could constitute atypical and

significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards*, 364 F.3d at 65 (citations omitted). In the absence of a detailed factual record, cases in this Circuit typically affirm dismissal of due process claims where the period of time spent in SHU was short–*e.g.*, 30 days–and there was no indication that the plaintiff endured unusual SHU conditions. *Id*. at 65-66 (collecting cases).

In *Arce v. Walker*, 139 F.3d 329, 334-35 (2d Cir. 1998), the Second Circuit made it clear that even though the prison condition at issue in *Sandin* was an inmate's challenge to his confinement in "disciplinary" segregation, the *Sandin* analysis is properly applied to determine whether non-punitive, "administrative" segregation implicates a state-created liberty interest. Once the court determines that a liberty interest exists, then the distinction between administrative and disciplinary segregation determines how much process is due. *See Wilkinson v. Austin*, 545 U.S. 209, 224-25 (2005) (when a liberty interest is established, the court turns to the question of what process is due an inmate because the requirements of due process are flexible depending on what the particular situation demands) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

New York regulations governing Ad Seg provide that an inmate receive a hearing within fourteen days of entering Ad Seg. 7 N.Y.C.R.R. § 301.4(a). Once it is determined that Ad Seg is appropriate, the inmate's status must be reviewed every sixty days. *Id.* § 301.4(d). Inmates in Ad Seg are housed in the SHU and are subject to

most of the same restrictions as inmates housed in SHU for disciplinary reasons. *See id.* § 301.4(c) (Ad Seg inmates will be subject to the same rules and regulations as those disciplinary inmates who have completed 30 days of satisfactory adjustment).

If it is determined that the inmate had a liberty interest in remaining free of Ad Seg, due process requires only that the inmate must receive some notice of the reasons for the placement and an opportunity to present his views to the prison official charged with deciding whether to transfer the inmate into Ad Seg. *Samms v. Fischer*, No. 9:0-CV-349, 2011 WL 3876528, at *10 (N.D.N.Y. March 25, 2011) (Report-Recommendation), *adopted by* 2011 WL 3876522 (N.D.N.Y. Aug. 31, 2011).[6] This opportunity to present his views need not be as formal as that required for disciplinary proceedings, rather, the officials must conduct an informal and non-adversary review of the information in support of the inmate's transfer into administrative custody. *Id.* (citations omitted).

## B. Application

Defendants do not argue that plaintiff lacked a liberty interest, and they do not argue that defendant Smith lacked personal involvement.[7] Instead, defendants argue that plaintiff is confusing Ad Seg with disciplinary segregation when he argues that he

---

[6] The district court in *Samms* relied upon *Hewitt v. Helms*, 459 U.S. 460, 476 (1983), for this due process requirement. The court did note that although the *Hewitt* analysis for determining the existence of a liberty interest was overruled in *Sandin*, the *Hewitt* decision was still instructive in determining the appropriate level of procedural safeguards once a liberty interest is found. 2011 WL 3876528, at *10 n.4 (citing *Wilkinson v. Austin*, 545 U.S. at 229).

[7] Defendant Smith was clearly involved in the decision to release plaintiff from Ad Seg because he signed the order, and the regulations specifically provide for the Superintendent's (or his designee's) involvement in the determination. *See* 7 N.Y.C.R.R. § 301.4(d)(2).

did not receive a misbehavior report and was not allowed to present exhibits in opposition to the Ad Seg placement. (Def.s' Mem. of Law at 9-10). This court disagrees.

Plaintiff clearly cites the Ad Seg regulations in his amended complaint, and states that he is aware that inmates may be placed in Ad Seg if their presence in general population poses a threat to the safety and security of the facility. (AC ¶ 7) (citing 7 N.Y.C.R.R. § 301.4(b)). Plaintiff states that at his initial Ad Seg hearing, in January of 2010, he was given "absolutely no reason whatsoever to . . . believe that plaintiff would be or become a threat to the security or safety of the institution." (AC ¶ 8). Plaintiff does state that he never had "so much as a disciplinary infraction." (*Id.* ¶ 9). However, this court interprets plaintiff's statement liberally[8] as an assertion that he maintained appropriate behavior while in Ad Seg, and that he should have been released sooner, or not placed in Ad Seg at all. The court does not find that plaintiff has confused Ad Seg and disciplinary confinement.

In his amended complaint, plaintiff alleges that he was in Ad Seg for more than 500 days,[9] long enough to establish a liberty interest under *Colon, supra*. Thus, plaintiff would have been entitled to at least the minimum due process requirements for Ad Seg. Because this is a motion to dismiss, and the court has only plaintiff's

---

[8] It is well-settled that the court must interpret a pro se plaintiff's arguments with the utmost liberality. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (a court is to read a pro se party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest")).

[9] In fact, it is clear from defendants' submission that plaintiff was in Ad Seg from December 29, 2009 until defendant Smith signed the release order on December 6, 2011. (Dkt. No. 19-3 at 2).

amended complaint upon which to rely, the court cannot determine whether plaintiff's due process rights were violated either in his initial placement or in the required periodic reviews. Plaintiff claims that there was "no reason whatsoever" for his placement or his maintenance in Ad Seg. Further, although he may not have been entitled to submit "exhibits," without more, it is not clear that he was given a sufficient opportunity to respond.

The court notes that defendants have filed Superintendent Smith's order releasing plaintiff from Ad Seg only for purposes of showing that plaintiff is no longer incarcerated in Ad Seg. While this document is appropriately submitted in conjunction with defendants' mootness/jurisdictional argument, pursuant to Rule 12(b)(1), the court cannot accept the additional information in that document in support of a decision on the merits of a motion to dismiss pursuant to Rule 12(b)(6). It is clear that the document is incomplete, and even though the document releasing plaintiff from Ad Seg contains information regarding his placement, there is no indication what was contained in the initial document or in the periodic reviews. Thus, the court will not recommend granting a motion to dismiss as against defendant Smith on plaintiff's procedural due process claim.[10] The court makes no finding as to

---

[10] Plaintiff also generally states that his "substantive" due process rights were violated. *See e.g.* AC at p.19 (challenging his visitation privileges in Ad Seg as a denial of procedural and substantive due process). The court notes that if a constitutional claim is covered by a specific provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard applicable to the specific provision, not under the more general "substantive due process" standard. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Thus, to the extent that plaintiff in this case mentions "substantive" due process, the court will analyze his claims under the specific constitutional provision applicable to his claims as discussed below.

whether such a claim would survive summary judgment.

### 2. Free Exercise of Religion/Equal Protection

#### A. Legal Standards

##### i. Religion

The First Amendment guarantees the right to the free exercise of religion. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). This right "is not absolute or unbridled, and is subject to valid penological concerns, including those relating to institutional security." *Johnson v. Guiffere,* 04-CV-57, 2007 WL 3046703, at *4, 2007 U.S. Dist. LEXIS 77239 (N.D.N.Y. Oct.17, 2007). However, the Second Circuit has also found that a prisoner's free exercise right is not extinguished by his confinement in SHU or keeplock. *Ford*, 352 F.3d at 597 (citing *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993)). In order to limit this right, DOCCS must provide a legitimate penological interest. *See Turner v. Safely*, 482 U.S. 78, 89 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

##### ii. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Generally, the equal protection clause has been "concerned with

governmental 'classifications that affect some groups of citizens differently than others.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citation omitted) To establish an equal protection violation, the plaintiff must show that the defendants applied a different standard to similarly situated individuals. *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 111 (2d Cir. 2006). Plaintiff must first show that he was treated differently than others similarly situated because of intentional or purposeful discrimination. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Then, plaintiff must show that the difference in treatment cannot survive the appropriate level of scrutiny. *Id.*

### B.    Application

In this case, plaintiff alleges that for the entire time that he was in Ad Seg, he was denied the right to attend congregate religious services by the "administration." Defendants in this case cite *Bellamy v. McMickens*, 692 F. Supp. 205, 214-15 (S.D.N.Y. 1988) and *Matiyn v. Henderson*, 841 F.2d 31, 37 (2d Cir.), *cert. denied*, 487 U.S. 1220 (1988) for the proposition that a denial of congregate services due to incarceration in Ad Seg does not rise to the level of a First Amendment violation. (Def.s' Mem. of Law at 7-8). However, prohibiting a particular inmate's attendance at congregate religious services because he is housed in Ad Seg does not violate the First Amendment *if the restriction serves a valid penological purpose. Graham v. Coughlin*, No. 86 Civ. 163, 2000 WL 1473723, at *6 (S.D.N.Y. Sept. 29, 2000) (citing *Bellamy v. McMickens*, 692 F. Supp. at 214-15).

The court would point out that *Matyin* and *Bellamy* were decided on summary

judgment motions. In determining that there was a legitimate penological interest in both of the cited cases, the courts went beyond asserting that the restriction was reasonable simply because plaintiff was in Ad Seg. *See Matiyn*, 841 F.2d at 37 (Matiyn was in Ad Seg for four days, and the court found that he was prevented from attending communal services for reasons related to legitimate penological interests). In *Bellamy*, the court also examined whether the plaintiff had alternative means to exercise his right. *See Bellamy*, 692 F. Supp. at 215 (plaintiff was not permitted from attending communal religious services because of the threat posed to him by other inmates, and he was ministered to each week in private and attended bible study classes conducted on the maximum security tier). *See also Shepherd v. Powers*, No. 2012 WL 4477241, at *8 (S.D.N.Y. Sept. 27, 2012) (it is error to assume that prison officials are justified in limiting an inmate's free exercise rights simply because the inmate is in disciplinary confinement).

This case comes before the court on a motion to dismiss, and plaintiff claims that he was not able to attend congregate services or have a minister come to him even after his father passed away.[11] Because this is a motion to dismiss, the court has no basis upon which to determine whether the restriction is reasonable, and no basis to determine whether plaintiff had any alternative methods of exercising his First Amendment right.

---

[11] It is true that the First Amendment does not compel that the prison provide inmates with the spiritual counselors of their choice. *Graham v. Coughlin*, 2000 WL 1473723, at *6. The state need only provide inmates a reasonable opportunity to worship. *Id.* Because this is a motion to dismiss, the court has no way of evaluating the merits of plaintiff's allegation that he was not given the opportunity to worship.

Additionally, plaintiff alleges that inmates of other religions that are housed in plaintiff's unit are frequently visited by their rabbis or chaplains, while plaintiff was refused the same treatment. (AC at p.44). If inmates of other religions who are housed in Ad Seg were being treated differently, then plaintiff might have an Equal Protection claim in addition to a First Amendment claim. The court cannot determine these issues on a motion to dismiss. Thus, the court will not recommend dismissal of the First Amendment Religion or the Equal Protection claim (in relation to religion)[12] as against defendant Smith.[13]

### 3.     Property Claims

### A.     Legal Standards

The deprivation of property, whether intentional or unintentional, without more, is not actionable under section 1983 as long as the state has an adequate post deprivation procedure available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (no protected property interest in a prison cell). New York provides an adequate

---

[12] Plaintiff uses the term "equal protection" in various parts of the amended complaint, but the religion claim is the only one in which plaintiff may actually state a claim for equal protection in addition to a First Amendment claim. (*See e.g.* AC at p.49) (where plaintiff states that defendant Prack's failure to intervene "commits Equal Protection under the law").

[13] The court notes that defendants also claim that they are entitled to qualified immunity. (Def.s' Mem. of Law at 19-21). The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is well-established that inmates have a constitutional right to participate in congregate services with the exceptions noted above. *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993). Because this is a motion to dismiss, and the court cannot make a determination of whether the plaintiff's constitutional rights were violated without a factual determination of the reasonableness of the restriction or whether inmates of other religions were treated differently, the court will not recommend granting dismissal on qualified immunity grounds.

post-deprivation remedy in the Court of Claims with respect to property claims by prison inmates. *See Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996); *Love v. Coughlin*, 714 F.2d 207, 209 (2d Cir. 1983); *see also* N.Y. CT. CL. ACT § 10(6) (McKinney 1998). Plaintiff also has no right to be free of unreasonable searches and seizures while incarcerated because he has no reasonable expectation of privacy in his cell. *Hudson*, 468 U.S. at 529-30.

### B. Application

In this case, plaintiff alleges that he was not allowed to have all of his property in Ad Seg. Plaintiff states that most of his property been in "long term storage," (AC at p.27), some of the property has been lost or stolen, and some has "never again been seen." (AC at p.48). Even if defendant Smith had deprived plaintiff of property, his claim would not be actionable under section 1983. Therefore, any claims that plaintiff was temporarily deprived of his property while he was in Ad Seg, or that some of his property may have been lost or stolen while he was in Ad Seg may be dismissed, whether he bases his argument on Fourth or Fourteenth Amendment grounds.

### 4. Eighth Amendment

### A. Legal Standards

In order to show that conditions of confinement violate the Eighth Amendment, the plaintiff must demonstrate that the conditions result in an "unquestioned and serious deprivation of basic human needs," and that defendants imposed those conditions with deliberate indifference. *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Whitley v. Albers*, 475 U.S.

312, 319-20 (1986); *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)). The placement of restraints such as handcuffs on an inmate does not, by itself, amount to excessive force or cruel and unusual punishment. *See Bridgeforth v. County of Rensselaer*, No. 1:08-CV-779, 2012 WL 2873361, at *6 (N.D.N.Y. July 12, 2012) (absent some allegation beyond forceful cuffing, the claim against defendant was insufficient as a matter of law). Confinement in SHU, in itself, notwithstanding its additional restrictions on inmates, has not been held to constitute cruel and unusual punishment. *See Monroe v. Janes*, No. 9:06-CV-859, 2008 WL 508905, at *7 (N.D.N.Y. Feb. 21, 2008) (Report-Recommendation), *adopted by* 2008 WL 508905, at *1 (N.D.N.Y. Feb. 21, 2008).

## B. Application

Plaintiff appears to claim that the restrictions imposed upon him in SHU constituted cruel and unusual punishment, but he does not describe any restrictions, other than the deprivations normally occurring in SHU, whether the inmate is in disciplinary or administrative confinement. Plaintiff alleges that he was handcuffed when escorted to the shower (AC at p. 27), but does not allege any abuse or injuries resulting from this conduct. Placing restraints on an inmate does not violate the Eighth Amendment unless the placement is totally without penological justification, grossly disproportionate, or involves the unnecessary or wanton infliction of pain. *Delgado v. Bezio*, No. 09 Civ. 6899, 2011 WL 1842294, at *7 (S.D.N.Y. May 9, 2011). Walking to the shower in restraints, without more, is insufficient to state an Eighth Amendment claim. *See also Harvey v. Harder*, No. 9:09-CV-154, 2012 WL

4093792, at *9 (N.D.N.Y. July 31, 2012) (citing *Bridgeforth v. County of Rensselaer*, No. 1:08-CV-779, 2012 WL 2873361, at *6 (N.D.N.Y. July 12, 2012) (absent some allegation beyond forceful cuffing, the claim against defendant was insufficient as a matter of law)).

## 5. Communication

### A. Legal Standards

An inmate's right to communicate with family and friends is essentially a First Amendment right, subject to section 1983 protection. *Pitsley v. Ricks*, No. 9:96-CV-372, 2000 WL 362023, at *4 (N.D.N.Y. March 31, 2000) (citing *Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975). Because of security concerns in correctional facilities, these First Amendment rights are subject to reasonable restrictions. *Id.* (citations omitted). An inmate has no right to unlimited telephone use. *Id.* Prison restrictions on inmate telephone calls have been upheld when the affected inmate has alternative means of communicating with the outside world, most often by use of the mail. *Id.* (citing *inter alia Rivera v. Senkowski*, 62 F.3d 80 (2d Cir. 1995)).

### B. Application

Plaintiff in this case alleges that in all the time he was incarcerated in SHU he was only allowed to use the telephone once, and therefore, his family had to come to visit him rather than speaking with him on the telephone. Plaintiff claims that this was a hardship for his family, but he does not claim that he was denied visitation.[14]

---

[14] He states that he was allowed one visit per week "without due process," although he also complains that this was insufficient. (AC ¶ 13).

Additionally, plaintiff concedes that he was allowed to write to his family, and there were no restrictions on this form of correspondence.[15]

Plaintiff also alleges that he has virtually no interaction with other inmates and has not been allowed to "exercise as desired with other inmates in general population."[16] (AC at p.27). Limitation on communication with other inmates is standard even for inmates who are not housed in SHU. *See* DOCCS Directive No. 4422(III)(6)(c) (inmates need advance authorization from the Superintendents of the facilities involved in order to correspond with other inmates). Additionally, although a minimum amount of exercise is required, this court knows of no constitutional right to exercising "as desired" with other inmates from general population.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 19) be **GRANTED IN PART**, and the amended complaint be **DISMISSED IN ITS ENTIRETY AS AGAINST DEFENDANTS FISCHER, PRACK AND LECLAIRE**, and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 19) be **DENIED IN PART**, and plaintiff's amended complaint may proceed only as to

---

[15] In the amended complaint, plaintiff states that "[a]lthough I do receive mail, my mail has to come from a completely different state and is not adequate as my father has had to visit personally . . . ." (AC at p.46). Plaintiff's point was that having to communicate by mail was a hardship, and that his family suffered because they could not afford to travel. His father suffered because he was ill, and it was difficult for him to travel.

[16] Plaintiff includes this allegation in his Eighth Amendment cause of action, but it is more appropriately discussed in the section on communication and association.

plaintiff's **PROCEDURAL DUE PROCESS and RELIGION CLAIMS** as against

defendant **SMITH.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.

Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 7, 2012

**Hon. Andrew T. Baxter**
**U.S.  Magistrate Judge**